UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
VOLUNTEER FIRE ASSOCIATION OF TAPPAN,
INC.,

                                  Plaintiff,

        – against –

COUNTY OF ROCKLAND, CHARLES (SKIP)
VEZZETTI, ANDREW M. CONNORS, KOK MENG
PNG, JOE PYZOWSKI, ALLEN JESSUP, MARK
MAHONEY, JOHN LOCH, and THOMAS SIMETI,

                                  Defendants.
------------------------------------------------------------------x

**OPINION AND ORDER**

No. 09-CV-4622 (CS)

Appearances:

Dwight D. Joyce
Law Offices of Dwight D. Joyce
Stony Point, New York
*Counsel for Plaintiff*

Darius P. Chafizadeh
Harris Beach PLLC
White Plains, New York
*Counsel for County Defendants*

Jarrett M. Behar
Sinnreich Kosakoff & Messina LLP
Central Islip, New York
*Counsel for Defendant John Loch*

Seibel, J.

       Before the Court are the Motions to Dismiss of Defendant John Loch, (Doc. 26), and Defendants County of Rockland (the "County"), Charles Vezzetti, Andrew M. Connors, Kok Meng Png, Joe Pyzowski, Allen Jessup, Mark Mahoney, and Thomas Simeti (collectively, the "County Defendants"), (Doc. 36); and Plaintiff Volunteer Fire Association of Tappan, Inc.'s Cross-Motion to Amend the Complaint, (Doc. 40).  For the reasons stated herein, Plaintiff's

motion is DENIED, Defendants' motions are GRANTED, and the Complaint is DISMISSED with prejudice.

## I.  BACKGROUND

### A.  Facts

For purposes of the present motions, the Court assumes the facts (but not the conclusions) alleged in the Complaint to be true.  Plaintiff is a volunteer fire association that consists of approximately 140 members and is located in Tappan, New York.  (Complaint ("Compl.") ¶ 1.)  For the past 100 years, Plaintiff has owned the property located at 123 Washington Street in Tappan and has maintained its headquarters at that site.  (*Id.*)  In the summer of 2007, the County of Rockland commenced efforts to reconstruct roadways and sidewalks in the Tappan Historic District, in which Plaintiff's headquarters is located, (*id.* ¶ 32)—a plan supervised by Mr. Vezzetti, who served as the County Superintendent of Highways, and Mr. Connors, who served as Deputy Superintendent of Highways, (*id.* ¶¶ 11, 13, 32).

In November 2007, the County, acting outside the parameters of the approved reconstruction plan, sought to construct a sidewalk on Plaintiff's property.  (*Id.* ¶ 33.)  Plaintiff objected to the construction; the County, Mr. Vezzetti, and Mr. Connors nonetheless pressed forward.  (*Id.* ¶ 35.)  On December 3, 2007, the Appellate Division of the New York State Supreme Court, Second Department ("Second Department") issued, upon Plaintiff's application, a temporary restraining order directing the County to cease all construction on Plaintiff's property.  (*Id.* ¶ 36.)

Over the following month, the Defendants met on at least three separate occasions to discuss the possibility of redrawing the map depicting the right-of-way surrounding Plaintiff's property to include the sidewalk as part of the County's property rather than part of Plaintiff's

property. (*Id.* ¶¶ 37–42.) The Defendants finalized their plans at a December 12, 2007 meeting at which Mr. Vezzetti, Mr. Connors, and Mr. Mahoney (a surveyor employed by the County, (*id.* ¶ 21)), as well as Mr. Png, Mr. Pyzowski, and Mr. Jessup (engineers employed by the County, (*id.* ¶¶ 15, 17, 19)), and Mr. Loch (a surveyor, contractor, and subcontractor of the County, (*id.* ¶ 23)) met with three other individuals not named as defendants in this case, and agreed to prepare a new right-of-way map, (*id.* ¶ 41). Mr. Loch, who had drawn the initial map depicting the property at issue, offered to redraw his map so as to widen the right-of-way and eliminate the trespass. (*Id.* ¶ 42.) On December 18, 2007, however, Mr. Mahoney created the map instead. (*Id.* ¶ 43.)

On April 11, 2008, Mr. Simeti, the Second Deputy County Attorney for the County of Rockland, (*id.* ¶ 25), and Mr. Vezzetti submitted an affirmation and affidavit, respectively, to the Second Department opposing the preliminary injunction that Plaintiff sought to prevent further construction on its property, (*id.* ¶ 44). Attached to both the affirmation and affidavit were copies of the December 18, 2007 map. (*Id.*) Defendants also submitted the map to the Supreme Court of the State of New York, County of Rockland, as an exhibit to the County's Motion for Summary Judgment in connection with a case Plaintiff filed on January 10, 2008 alleging, among other claims, trespass and nuisance. (*Id.* ¶ 45.)

  **B.**  **Procedural History**

Plaintiff filed the instant action on May 5, 2009. Plaintiff does not challenge Defendants' alleged trespass, which is the subject of the state court action,[1] but rather targets Defendants' conduct in creating and submitting to the state court copies of the allegedly

---

[1] A copy of Plaintiff's Complaint in that case is attached as Exhibit B to the Declaration of Darius P. Chafizadeh in Support of Motion of Dismiss. (Doc. 39.)

fraudulent map.  Plaintiff claims that Defendants (1) deprived Plaintiff of its substantive due process rights to be free from government conduct that shocks the conscience under 42 U.S.C. § 1983; (2) conspired to impede, hinder, obstruct, or defeat the due course of justice in the state court for the purpose of depriving Plaintiff of equal protection of the laws in violation of 42 U.S.C. § 1985(2), and thereby denied Plaintiff its property interest in the full value of its lawsuit; (3) deprived Plaintiff of its constitutional right under 42 U.S.C. § 1985(3) to be free of conspiratorial conduct that results in a deprivation of its constitutional rights; and (4) failed to act to prevent the conspiratorial deprivation of Plaintiff's constitutional rights under 42 U.S.C. § 1986.

Defendant Loch wrote to the Court on June 29, 2009 requesting a pre-motion conference in anticipation of his Motion to Dismiss, as per the Court's individual practices, (*see* Individual Practice 2(A)), and the Court scheduled the conference for August 6, 2009.  (Doc. 17.)  At the conference, various grounds for potential dismissal were discussed, (*see* Transcript of August 6, 2009 Conference ("Transcript"), (Doc. 53), at 8–12), and Plaintiff's counsel requested leave to amend the Complaint, (*id.* at 12–13).  The Court granted Plaintiff's request on the condition that Plaintiff file its Amended Complaint prior to Defendants' Motions to Dismiss, and set a deadline for the Amended Complaint of August 27, 2009.  (*See id.* at 12–14.)  The Court subsequently adjourned that initial deadline at the parties' joint request so that settlement talks could be pursued, (Doc. 19), and after these talks failed, re-set the deadline for October 13, 2009, (Doc. 21).

Plaintiff, however, failed to amend before the October 13, 2009 deadline.  Accordingly, Defendants proceeded with their Motions to Dismiss the original Complaint, serving copies upon Plaintiff as scheduled on November 13, 2009.  (Docs. 26, 36.)   Plaintiff responded as scheduled

4

on December 11, 2009 with its opposition papers, and at the same time served a Cross-Motion to Amend the Complaint. (Docs. 40, 41, 42.) Plaintiff attached to its Cross-Motion a Proposed Amended Complaint ("PAC"), (Doc. 45),[2] and cited only to this Proposed Amended Complaint—not its original Complaint—in arguing against the Defendants' Motions to Dismiss, (*see* Doc. 42).

I first consider Plaintiff's Cross-Motion to Amend, and then address the Defendants' Motions to Dismiss.

## II. DISCUSSION

### A. Plaintiff's Cross-Motion to Amend

#### i. Legal Standards

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).[3] Despite this language, the Court has "broad" discretion under Rule 15(a), *see, e.g.*, *Local 802, Associated Musicians v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998); *Wesley v. Muhammad*, No. 05-5833, 2010 WL 1541536, at *2 (S.D.N.Y. Apr. 13, 2010), and may deny leave "for good reason,

---

[2] Though Plaintiff's Memorandum of Law in Opposition to County Defendants' and Defendant John A. Loch's Motions to Dismiss and in Support of Plaintiff's Request to Serve and File a First Amended Complaint ("Pl.'s Opp'n & Cross. Mot. Mem."), (Doc. 42), and Plaintiff's counsel's corresponding declaration, (Doc. 41), were docketed separately from the Proposed Amended Complaint, (Doc. 45), the three documents were served upon the parties and provided to the Court together.

[3] Rule 15(a)(1) does not apply because the Cross-Motion to Amend came more than 21 days after service of the original Complaint and more than 21 days after service of the Defendants' motions under Fed. R. Civ. P. 12(b). *See* Fed. R. Civ. P. 15(a)(1).

including futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Where, however, the Court sets a deadline for amendments to the complaint and a party moves to amend once the deadline has passed, the Court must balance the more liberal standard of Rule 15(a) against the requirements of Federal Rule of Civil Procedure 16(b). *See Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). Failure to consider Rule 16(b) in such instances "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Parker*, 204 F.3d at 340 (internal quotation marks omitted). Under Rule 16(b), a party moving to amend after the applicable deadline must demonstrate good cause. *Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 101 (S.D.N.Y. 2003) (citing *Parker*, 204 F.3d at 339–40). Whether good cause exists depends on the diligence of the moving party. *Parker*, 204 F.3d at 340; *see Oppenheimer & Co. v. Metal Mgmt., Inc.*, No. 08-3697, 2009 WL 2432729, at **3–4 (S.D.N.Y. July 31, 2009) (diligence is "primary consideration" in determining good cause, and not even lack of prejudice to opposing party can trump lack of good cause to amend). In other words, "the movant must show that the deadlines [could not have been] reasonably met despite its diligence." *Lincoln v. Potter*, 418 F. Supp. 2d 443, 454 (S.D.N.Y. 2006).

Defendants argue that because Plaintiff moved to amend after its deadline for filing the Amended Complaint, Rule 16(b) should apply.  (*See* Loch's Reply Mem.[4] at 9–11; Cnty. Defs.' Reply Mem.[5] at 3–5.)  Plaintiff, however, argues that Rule 15(a) applies, as there is no formal scheduling order in effect in this case.  (*See* Pl.'s Reply Mem.[6] at 8–9.)  Ultimately, Plaintiff's Cross-Motion to Amend fails under either standard.

      **ii.**      **Rule 16(b)**

In the Court's view, Rule 16(b) should apply.  The Court by verbal order and then by endorsement set a deadline for the filing of an Amended Complaint, and it is immaterial that that deadline was not part of a formal Rule 16 scheduling order.  The Court "expect[s] parties to recognize that endorsed deadlines are Court orders," and "[e]ven in the absence of [a formal scheduling order], the Court expects parties to act *diligently* in the pursuit of their rights in order to allow the Court to manage its caseload effectively."  *Davidowitz v. Patridge*, No. 08-6962, 2010 WL 1779279, at *4 (S.D.N.Y. Apr. 23, 2010) (emphasis added).  Here, the so-ordered deadline served the same purpose as a formal scheduling order, namely "to offer a measure of certainty in pretrial proceedings."  *Parker*, 204 F.3d at 340.  Moreover, the logic of *Parker* and its progeny—docket control, orderly litigation, and discouraging "the indolent and the cavalier,"

---

[4] "Loch's Reply Mem." refers to the Reply Memorandum of Law in Further Support of Defendant John A. Loch's Motion to Dismiss and in Opposition to Plaintiff's Cross-Motion to Amend the Complaint, dated January 29, 2009.  (Doc. 29.)

[5] "Cnty. Defs.' Reply Mem." refers to the County Defendants' Memorandum of Law in Opposition to Plaintiff's Cross-Motion and in Further Support of Motion to Dismiss, dated January 29, 2009.  (Doc. 38.)

[6] "Pl.'s Reply Mem." refers to the Memorandum of Law in Reply and Further Support of Plaintiff's Motion to File and Serve a First Amended Complaint and in Further Opposition to Defendants' Motions to Dismiss the Complaint and Plaintiff's First Amended Complaint, dated March 5, 2010.  (Doc. 44.)

*id.* (internal quotation marks omitted)—applies to any "motion to amend filed after the deadline a district court has set for amending the pleadings," *id.*

Plaintiff has not demonstrated good cause under Rule 16(b). Plaintiff does not dispute that its Proposed Amended Complaint is untimely. Plaintiff indicated to the Court at the pre-motion conference that it could amend its Complaint in three weeks, (*see* Transcript at 13), and because of adjournments, Plaintiff was ultimately afforded over two months to amend. Instead, Plaintiff served its Proposed Amended Complaint over four months after the August 6, 2009 conference and nearly two months after the October 13, 2009 deadline. Courts have held such a delay to be sufficient for denying a motion to amend under Rule 16(b). *See, e.g.*, *Baergas v. City of N.Y.*, No. 04-2944, 2005 WL 2105550, at *10 (S.D.N.Y. Sept. 1, 2005) (denying leave to amend after "more-than-two-month delay in moving to amend the complaint"); *Amantes v. B & R Mach. Inc.*, 610 F. Supp. 2d 979, 983 (W.D. Wis. 2009) (denying leave to amend when "[a]lthough plaintiff had 11 weeks to amend her complaint as a matter of course, she did not seek to do so until after the deadline").

Notwithstanding such a delay, a plaintiff may demonstrate good cause where it can show that events bearing on its allegations occurred after the deadline to amend, or that it discovered information relevant to its allegations of which it was unaware prior to the deadline. *Woodworth v. Erie Ins. Co.*, No. 05-6344, 2009 WL 1652258, at *3 (W.D.N.Y. June 12, 2009). Plaintiff here appears to argue that new information has come to light, but its argument is unavailing.[7] Plaintiff states, without elaboration, "The relevancy of the Defendant's conduct as set forth in the

---

[7] Plaintiff does not argue that any relevant events transpired after the October 13, 2009 deadline. Indeed, as Defendants point out, Plaintiff's new factual allegations describe events that purportedly transpired years ago. (*See* Cnty. Defs.' Reply Mem. at 4.)

complaint and the proposed amended complaint was not immediate [*sic*] known. The Defendants' conspiracy was secret; many facts known to Defendants are now being uncovered or are yet undiscovered by Plaintiff." (Pl.'s Reply Mem. at 1–2.)[8] Plaintiff does not, however, claim that it discovered new information between October 13, 2009 and December 11, 2009—or identify such information, if there were any—and fails to explain why the information to which it had access prior to October 13, 2009 was insufficient for it to amend in a timely fashion. To the contrary, the fact that Plaintiff signaled to the Court on August 6, 2009 its plan to amend suggests that it envisioned on August 6, 2009—or, at the very least, prior to October 13, 2009— what amendments it would ultimately make to the Complaint. *See Baergas*, 2005 WL 2105550, at \*10 ("At the initial pre-trial conference . . . , plaintiff clearly indicated that he was contemplating an amendment to the complaint . . . . Plaintiff, therefore, cannot now claim to have been unaware of the information that formed the basis for [the amendment]."). Plaintiff thus fails to demonstrate that the October 13, 2009 deadline could not have been reasonably met despite its diligence. *See*, *e.g.*, *Rambarran v. Mount Sinai Hosp.*, No. 06-5109, 2008 WL 850478, at \*3 (S.D.N.Y. Mar. 28, 2008) (plaintiff's argument that she discovered witness with personal knowledge after deadline to amend was "vague," and "[w]ithout specific information regarding the new evidence at issue and the timing of its discovery—topics that have not been addressed by Plaintiff in her papers—the Court is unable to find that Plaintiff has demonstrated good cause"); *Trezza v. NRG Energy, Inc.*, No. 06-11509, 2008 WL 540094, at \*\*6–7 (S.D.N.Y. Feb. 28, 2008) (denying motion to amend where "nothing in [plaintiff's] motion papers or in any

---

[8] This statement is in Plaintiff's Reply Memorandum. The memorandum Plaintiff submitted in support of its Cross-Motion to Amend made no argument as to why the Court should permit Plaintiff to amend after the October 13, 2009 deadline. (*See* Pl.'s Opp'n & Cross Mot. Mem.)

of his other submissions to the Court suggests that he was unaware of the facts necessary to amend his pleading until after the deadline had passed").

The only other statement by Plaintiff that can be construed as an argument regarding good cause to amend appears in a December 18, 2009 letter to the Court, (Doc. 50), in which Plaintiff states that "[t]he additional material would be proper in a declaration or memorandum of law; however, an amended complaint provided more notice and a higher level of clarity to the Defendants." It is well-settled, however, that "[a] complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers," *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004), and a court must "disregard any portions of [a] declaration which set forth new facts, beyond the scope of the complaint, or legal arguments, both of which are not appropriate for consideration on a motion to dismiss," *In re UBS Auction Rate Sec. Litig.*, No. 08-2967, 2010 WL 2541166, at *16 (S.D.N.Y. June 10, 2010).

Ultimately, Plaintiff fails to offer a plausible excuse or other reason for its delay in amending the Complaint. When a party cannot account for its delay in moving to amend after the deadline for doing so has passed, it fails to demonstrate good cause, and the motion must be denied. *See, e.g.*, *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05-3749, 2009 WL 3467756, at **3–6 (S.D.N.Y. Oct. 28, 2009) (affirming magistrate judge's denial of motion to amend where proposed amendments did not involve newly discovered evidence, plaintiffs could have asserted new claims at outset of case, parties had already engaged in legal briefing, and plaintiffs never requested that deadline be extended); *Rent-A-Center, Inc.*, 215 F.R.D. at 104–05 (movants failed to demonstrate good cause where substance of new claim was known when they filed original pleading; "[movants] offer no explanation for why they failed to include the subject matter of the

proposed amendment in their earlier amendment[, n]or do they try to explain why the deadline set forth by the Court's Scheduling Order could not be reasonably met"). Accordingly, amendment under Rule 16(b) is denied.

### iii. Rule 15(a)

Even if Rule 15(a) applied, Plaintiff's Cross-Motion to Amend would likewise fail, as Plaintiff's actions demonstrate undue delay and undue prejudice, and perhaps bad faith.

At the August 6, 2009 pre-motion conference, Plaintiff was notified of Defendants' intent to move to dismiss, as well as several grounds upon which Defendants planned to move. (*See* Transcript at 8–12.) In order to avoid superfluous and repetitive rounds of briefing, the Court sought to ensure that Plaintiff would amend prior to service of Defendants' motions.[9] (*See id.* at 12 ("No point in having them move against a complaint that you're going to amend afterwards."), 14 ("If you decide, Mr. Joyce, that you're not going to file an amended complaint, just let [Defendants] know when you reach that conclusion. They can get to work on their motion papers based on what you have now.").)

Plaintiff opted to ignore the Court's instructions, premising its Proposed Amended Complaint on Defendants' Motions to Dismiss rather than the discussions at the pre-motion conference. Worse, it seems that, after the deadline had passed, Plaintiff represented to Defendant Loch that it was *not* going to amend its Complaint: counsel for Defendant Loch notes

---

[9] Indeed, this is the very purpose for which pre-motion conferences are designed. *See Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987) ("[Pre-motion conferences] serve the useful purpose of narrowing and resolving conflicts between the parties and preventing the filing of unnecessary papers. Litigants and the courts profit when this occurs."); *see also Papandon v. United States*, No. 99-7860, 2008 WL 3981580, at *1 n.1 (E.D.N.Y. July 7, 2008) (pre-motion conference helps determine "whether the motion is sufficiently viable to warrant the parties' expenditure of resources").

in his reply declaration that he sent Plaintiff's counsel a letter on October 19, 2009—six days after the deadline for the Amended Complaint—requesting confirmation that Plaintiff did not plan to amend, and that Plaintiff's counsel telephoned him in response and confirmed that Plaintiff would indeed not be amending.  (*See* Reply Declaration of Jarrett M. Behar in Further Support of Defendant John A. Loch's Motion to Dismiss and in Opposition to Plaintiff's Cross-Motion to Amend the Complaint, (Doc. 28), ¶ 8 & Ex. A; *see* Doc. 48.)  Plaintiff does not dispute that it made this representation.  (*See* Doc. 50.)

Plaintiff has not plausibly argued that relevant facts emerged subsequent to the October 13, 2009 deadline so as to warrant its untimely amendment and has offered no explanation for its disregard of the Court-ordered deadline.  The Court is left to conclude that, at best, Plaintiff inexcusably and cavalierly overlooked the deadline.  At worst, Plaintiff affirmatively misled Defendants about its intentions in order to waste their time and money, or to gain an unfair advantage in responding to the motions,[10] or both.  Were the Court to permit Plaintiff to amend in this fashion, the Defendants would be unfairly prejudiced:  Defense counsel would have wasted resources, and Defendants would have needlessly incurred legal fees, in drafting motions to dismiss the original Complaint, and they were forced to respond to the new allegations and claims only in reply on their motions rather than in a fresh round of briefing.  The Court will not reward Plaintiff's conduct—whether the result of laziness, disregard, or gamesmanship—by permitting such prejudice to Defendants.  Nor will it permit parties to undermine its case-management efforts through the ignoring of its deadlines without excuse.

---

[10] Plaintiff also seeks to add four new constitutional claims, but these causes of action are based upon the same operative facts alleged in the original Complaint.  (*See* PAC ¶¶ 81–117, 145–63.)

This case finds an analogue in *Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*, No. 09-4050, 2009 WL 4278179 (S.D.N.Y. Nov. 23, 2009). In *Footbridge*, the parties appeared before the Court for a pre-motion conference at which the defendants indicated their intent to move to dismiss, and the plaintiffs sought and were granted leave to amend prior to the defendants' motions. *Id.* at *1. This process, the Court emphasized, "was intended to allow the parties to avoid unnecessary expenditure of time, effort and expense in briefing a motion to dismiss, only to have plaintiffs seek leave to file a further amended complaint curing any deficiencies that were known and were curable at an earlier point in time." *Id.* The plaintiffs amended in a timely fashion, and the defendants moved to dismiss, but—as here—the plaintiffs (again) sought to amend nearly four weeks after the defendants submitted their motions. *Id.* The plaintiffs in *Footbridge* likewise did not demonstrate that unforeseen events or new information necessitated the proposed amendments. *Id.* at *2. The Court denied the motion, holding that "Plaintiffs' decision to attempt to add these claims four weeks after receiving defendants' motions [to dismiss], coupled with their extensive proposed amendments to the claims that are the subject of the pending motions, suggests that this was a sharp tactic and one that would unfairly prejudice defendants and result in undue delay." *Id.*; *see DeLuca v. SmithKline Beecham Corp.*, No. 06-2153, 2007 WL 541656, at *3 (S.D.N.Y. Feb. 20, 2007) (plaintiff requested to amend complaint in opposition to defendant's motion to dismiss; court held that "[b]y requiring defendant to incur the legal fees—and by requiring defendant's counsel to expend the time—required to file this motion, plaintiff has forfeited her right to amend the complaint"). Here, too, Plaintiff's tactics unfairly prejudiced Defendants and resulted in undue delay. The Court therefore acts within its discretion in denying Plaintiff's motion under Rule 15(a).

**B.     Defendants' Motions to Dismiss**

The Court now considers Defendants' Motions to the Dismiss the original Complaint under Rule 12(b)(6).[11]

**i.     Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the

---

[11] Defendants also move to dismiss on abstention grounds, arguing the Court should avoid adjudicating these claims during the pendency of the related state court action. (*See* Memorandum of Law in Support of Defendant John A. Loch's Motion to Dismiss, (Doc. 27), at 6–8; Memorandum of Law in Support of Motion to Dismiss, (Doc. 37), at 5–9.) Since the filing of these motions, the parties have informed the Court that the state court action has concluded, and offered to submit additional briefing arguing the effect of that case's outcome on their abstention arguments. (*See* Docs. 46, 47.) Such additional briefing is unnecessary, and I will not address the abstention issue, as, for the reasons described below, I hold that Plaintiff fails to state a claim under Rule 12(b)(6).

reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Here, Plaintiff's Opposition does not address Defendants' Motion to Dismiss the original Complaint; it cites exclusively to the Proposed Amended Complaint, in which it includes new allegations with respect to each of the four original claims. Ordinarily, as Defendant Loch argues, (*see* Loch's Reply Mem. at 3), when a plaintiff fails to address a defendant's arguments on a motion to dismiss a claim, the claim is deemed abandoned, and dismissal is warranted on that ground alone. *See Vargas v. Morgan Stanley*, No. 08-9512, 2010 WL 3911494, at *5 n.11 (S.D.N.Y. Sept. 29, 2010) ("Plaintiff did not oppose Defendants' motion to dismiss Plaintiff's negligent hiring, retention and supervision claim and has therefore abandoned the claim."); *Arias v. Nasdaq/Amex Mkt. Grp.*, No. 00-9827, 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment); *see also* Local Civ. R. 7.1(a) ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default.").

In an excess of caution, however, I also consider the substance of the claims in Plaintiff's original Complaint, and find them to be without merit.

### ii.    Section 1983 Substantive Due Process Claim

Plaintiff's first cause of action alleges that Defendants' actions in creating and submitting the allegedly fraudulent map to the state court deprived it of its substantive due process rights

under 42 U.S.C. § 1983 to be free from government conduct that shocks the conscience. (Compl. ¶¶ 46–67.)

"To establish a violation of substantive due process, a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (internal quotation marks omitted); *see Cohn v. New Paltz Cent. Sch. Dist.*, 363 F. Supp. 2d 421, 434 (N.D.N.Y. 2005) (substantive due process violation requires "extreme or egregious" conduct so "brutal" or "offensive to human dignity" as to shock the conscience) (internal quotation marks omitted). Substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit. . . . [Its] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001) (internal quotation marks omitted) (alteration in original).

Defendants' alleged conduct does not rise to this very high level. To whatever extent Defendants may have sought to influence the outcome of the state court trespass litigation improperly by submitting a fraudulent map, that conduct is eminently correctable in state court.[12]

---

[12] To the extent the outrage is that Defendants singled out Plaintiff for unfair treatment, the claim also fails. *See Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (no constitutional violation if "what would serve to raise defendant's actions beyond the wrongful to the unconscionable and shocking are facts which, if proven, would constitute, in themselves, specific constitutional violations"). "[W]here a specific constitutional provision prohibits government action"—here, the Equal Protection Clause or 42 U.S.C. § 1985—"plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Id.* (defendant's actions not sufficiently shocking but for claimed First Amendment and Equal Protection violations; substantive due process claim subsumed in those claims); *see also Hubbard v. Hanley*, No. 09-10265, 2010 WL 1914989, at *5 (S.D.N.Y. May 12, 2010) ("[Plaintiff's] substantive due process claim is at best redundant and subsumed in his other

Indeed, one wonders why, if the outrage is the deception of the state court, Plaintiff chose not to bring the alleged fraud to the state court's attention. (*See* Transcript at 4–6.) Nor would the ultimate outcome if the Defendants' alleged fraud succeeded—a sidewalk slightly exceeding its right-of-way—constitute conduct that offends human dignity. And submitting to a state court a map created after the alleged improper acts occurred is unlikely to deceive a finder of fact in any event. The alleged misconduct here is not brutal, extreme, or beyond the ability of the state courts to correct. Accordingly, it does not meet the standard for a substantive due process violation.

### iii.     Sections 1985 and 1986 Claims

In its second and third causes of action, Plaintiff alleges that Defendants conspired to and did impede, hinder, obstruct, or defeat the due course of justice in Plaintiff's state court action with intent to deny Plaintiff equal protection of the laws, in violation of 42 U.S.C. §§ 1985(2), (3). (Compl. ¶¶ 68–87.) To make out a claim under Section 1985, Plaintiff must allege that Defendants' actions were motivated by class-based, invidious discriminatory animus—that is, that Plaintiff was a member of a protected class and that Defendants' conspiracy was directed against Plaintiff as a member of such class. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (in order to state claim under § 1985(3) "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"); *Gleason v. McBride*, 869 F.2d 688, 694–95 (2d Cir. 1989) ("In order for [Plaintiff's] complaint to state a cognizable claim under the pertinent provisions of section 1985, it had to allege that he was a member of a

---

claims, and must be dismissed."); *Hickey v. City of N.Y.*, No. 01-6506, 2004 WL 2724079, at *18 (S.D.N.Y. Nov. 29, 2004) ("[S]ubstantive due process analysis is not available where a more specific constitutional standard is directly applicable.").

protected class . . . ."). A plaintiff may allege facts sufficient to support a conclusion of class-based discriminatory animus when, for instance, it alleges "verbal references to the plaintiff's protected class, or allegations that the defendants improperly treated other [similarly situated individuals] in ways similar to that in which they treated [plaintiff]." *Kashelkar v. Bluestone*, No. 06-8323, 2007 WL 2791432, at *4 (S.D.N.Y. July 25, 2007) (alterations in original) (internal quotation marks omitted). Although Plaintiff certainly alleges that Defendants treated Plaintiff improperly and unfairly, it does not allege a single fact in its Complaint supporting an inference that Defendants' treatment was based on Plaintiff's membership in a protected class.[13] Indeed, it does not even suggest the class into which Plaintiff might fall. *See Gleason*, 869 F.2d at 695 (Section 1985 does not protect against discrimination against individuals, only classes). As such, Plaintiff's Section 1985 claims fail.

Plaintiff's claim that Defendants violated Section 1986 by failing to act to prevent the deprivation of its constitutional rights, (Compl. ¶¶ 88–93), must also fail.

> [Section] 1986 provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so. *Thus, a § 1986 claim must be predicated upon a valid § 1985 claim.*

---

[13] A plaintiff alleging a Section 1985 violation may not proceed under a "class of one" theory. *See, e.g.*, *Robinson v. Allstate*, 706 F. Supp. 2d 320, 328–29 (W.D.N.Y. 2010) (Section 1985 claim may not be based on class-of-one theory); *Chance v. Reed*, 538 F. Supp. 2d 500, 509 (D. Conn. 2008) (same). But even assuming that such a theory were viable here, Plaintiff has not alleged in its Complaint that others were treated more favorably than it was. *See, e.g.*, *Rose v. Bethel*, No. 03-1241, 2007 WL 2476389, at *16 (S.D.N.Y. Aug. 29, 2007) (assuming without deciding that Section 1985 protects classes of one, and holding that plaintiff's claim failed because it did not sufficiently allege "that plaintiff was treated differently than others for no rational reason"). Indeed, Plaintiff has not come close to meeting the required standard of alleging the disparate treatment of comparators with an extremely high degree of similarity to it. *See Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (citations and internal quotation marks omitted) (emphasis added). As Plaintiff fails to state a claim under Section 1985, it likewise fails to state a claim under Section 1986.

### III.  CONCLUSION

For the reasons stated herein, Plaintiff's Cross-Motion to Amend the Complaint is DENIED, and Defendants' Motions to Dismiss the Complaint are GRANTED. Plaintiff's claims are DISMISSED with prejudice. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 26, 36, 40), enter judgment in favor of Defendants, and close the case.

SO ORDERED.

Dated: November 24, 2010
      White Plains, New York

                                            _____
                                            CATHY SEIBEL, U.S.D.J.